STANLEY CO. OF AMERICA v. GENERAL TALKING PICTURES CORPORATION et al.

GENERAL TALKING PICTURES CORPORATION et al. v. STANLEY CO. OF AMERICA.

Nos. 4461, 4462.

Circuit Court of Appeals, Third Circuit.

March 2, 1931.

Rehearing Denied April 24, 1931.

Chas. Neave, Merrell E. Clark, and Henry R. Ashton, all of New York City, for Stanley Co. of America.

Samuel E. Darby, Jr., and Ephraim Berliner, both of New York City, E. Ennalls Berl, of Wilmington, Del., and Darby & Darby, of New York City, for General Talking Pictures Corporation.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge.

BUFFINGTON, Circuit Judge.

In the court below the General Talking Pictures Corporation and the De Forest Phonofilms, Inc., hereafter called plaintiffs, owners of patent No. 1,607,480, granted November 16, 1926, to Elias E. Ries for method of reproducing photographic sound records, and three others, viz., No. 1,693,071, granted November 27, 1928, to Lee De Forest for a sound-recording attachment for motion pic-

ture cameras; No. 1,466,701, granted September 4, 1923, to Lee De Forest for method of and means for controlling electric currents by and in accordance with light variation; and No. 1,695,414, granted December 18, 1928, to Lee De Forest for talking moving picture machine, brought this suit against the Stanley Company of America, hereafter called defendant, charging infringement thereof. Such defendant being a mere user of a machine made by the Western Electric Company, the latter assumed the defense and is the real defendant. Generally speaking, the case has incidentally brought to our attention the present use of "talkie-movies" and the means by which both sounds and scenes are synchronously produced by one mechanism from the same film. But with the photographing upon such film of records from which sound and scene can be made, we are not here concerned, for this case in no respects concerns the making of such film records, but involves the utilization of such finished film recorded in one respect, namely the reproduction of sound. We refer to this in order to now dispel any impression that the patent here involved is the foundation stone, so to speak, of the "talkie-movie" art. Now in sound reproduction two types of records have long been known, namely, the disc system, which is used in victrola practice, with which we are not here concerned only to say the sound waves are there recorded by a cutting stylus on a wax record and reproduced by contact with a needle. The other known method, and with which we are here concerned, is where the sound waves are photographed on a sensitized film from which film record they are reproduced by action thereon of a beam of light. It is, as we have said, not with the production of these recorded films, but with their use after they have been produced, that we are here concerned. In the already made photographed film which the patent in suit uses, the sound vibrations have been photographed on the sensitized film, and, without entering into details, it suffices to say the photographed modulations are evidenced by differences in film translucense. Such being the case, it follows that, as such a film is moved past an effective line of light, these variations in translucency vary the quantum of penetrating light and so vary the degree to which the light cell is illuminated. This results in correspondingly electrical vibrations which in due course are translated by a loud speaker into sounds which correspond to and are in reality replica or re-creations of the sounds which had made the original sound

record. It will be noted that for various reasons in such sound reproduction the width of the line of light penetrating the film must be exceedingly slight and sharply defined in order to obtain the desired clear-cut and sharp sound effects desired just as in the disc practice already referred to the excitant needles must be sharp. Now it was to this narrow sharply defined line of light, and to the means of obtaining and using it, that Ries patent, No. 1,607,480, in question pertained. From Ries' specification we gather that his line of light had the three characteristics. First, it was mechanically produced; second, the mechanism was characterized by a narrow slit in a screen; and, lastly, such screen was for desired functional reasons located in close proximity to the film. From our study of the specification, the claims, and the art we may say that his disclosure was a combination mechanism in which a narrow screen light slit located near or juxtapositioned to a sound-photographed film was the gist of Ries' patent.

Turning to the specification we find these features expressly noted or necessarily implied. In these respects it says: "This record is produced by moving the photographic film behind an apertured screen having preferably a very narrow slit aperture with the film in such relation thereto that the area of exposure will be limited to the area of the slit or aperture, and the light rays being so focused upon the screen that the aperture will be flooded with light and affect the sensitive surface of the film uniformly over the exposed area; the purpose of limiting the area of exposure to the area of the slit aperture being to prevent diffusion of light rays beyond the direct image of the aperture." And again: "In front of the cap 34, is shown the moving film, I, traveling downwardly in close proximity to the raised portion 35, so that the portion of its surface intended for the record passes by the light opening 36." And in the claims we find the same elements, stated in different words, but in function the same, viz., claim I: "* * * Which method consists in moving the photographic film behind a screen having a small aperture in alignment with the record band, projecting a beam of light of constant intensity through such aperture restricting the area of the record band exposed to such light to the area of said aperture." Claim 2: "The method of sound reproduction which consists in transmitting light of substantially constant intensity through a highly restricted aperture," And Claim 5: "The method of sound reproduction which consists in focusing light of substantially constant intensity or candle power through a small window aperture in a fixed screen upon a contiguous moving sound record having translucencies which vary as successive portions thereof are exposed to the light in accordance with the amplitude of air vibrations accompanying the original sonorous action, restricting the area of exposure of the sound record to the area of the aperture, and spreading the residual light transmitted through the record upon a light sensitive resistance material having relatively large cross section in an electric circuit."

Confirming our estimate of the crux of the patent we note that in Ries' application passage through the Patent Office the Examiner said: "The claims as above amended are now limited to applicant's specific method of moving a photographic film across a small aperture in such manner as to limit the area of exposure to the area of the aperture. It is this restriction in this exposed area that enables the successful making of photographic sound records, and also permits of operation at any desired practical speed without overlapping, blurring or double exposure. To successfully reproduce the record the area of exposure to the beam of light which affects the light-sensitive electrical conductor must likewise be limited to the area of the aperture, and preferably an aperture having the same shape and area as the aperture used in recording. This feature of limiting the area of exposure was fully presented to the Examiner (subsequent to the date of the Examiner's last action in the present case) in applicant's divisional case on the recording method, and accepted as distinguishing applicant's invention over the prior art." So also he later summarized as follows: "The novelty in this application resides in the provision of the slit means in the location specified which is an improvement in the method of reproducing sound and not an improvement in the reproduction of pictures combined with sound reproducing as stated in claims 6 and 7."

The defenses set up are, first, that, for various reasons, the patent is invalid; and, second, that it is not infringed. Turning to the defense of invalidity we note that it is contended that the two important elements of Ries' combination, to wit the narrow slitted screen in close proximity or juxtapositioned to the film, were disclosed before Ries. Substantial as is the testimony in support of this contention, and assuming both the narrowness of the slit and the location of the narrow slit near the film were each individually old,

we will assume for the purposes of this case that, even if those two elements were old, their combination with other elements made a novel combination, and that the patent is valid.

■ Assuming, therefore, that the patent is valid, we next consider whether the defendant's device infringes. Now the proofs show that in sound reproduction there are two kinds of slits, viz., the mechanical and the optical. Ries used the former, the narrow slit in the screen simply allowing a correspondingly limited line of light to pass. They further show that the mechanical slit was open to grave objections. In that regard the testimony of Robert W. Wood, professor of experimental physics at Johns Hopkins University, is: "As to the advantages in the use of an optical system such as shown in this Exhibit 20, compared with a physical slit such as shown in the Ries patent, in the first place, the fact that the film is not running in contact with any material object, such as a plate, prevents the formation of scratches on the film, which, in addition to the bad effect that they have in themselves, form crevices in which dust can collect, and by its opacity introduces so-called ground noises, disturbing sounds, in the loud speaker. This is confirmed by the testimony of Dr. De Forest, who says: "In 1924 I began to introduce the optical slit. * * * The optical-slit is very much preferable to the mechanical slit; it avoids the necessity of keeping the slit clean. * * * I think we completely abandoned the physical slit by that date" (1927).

Now the defendant uses an optical slit, which is protected from dirt and is not located near the film, and therefore cannot scratch it. According to the testimony of Dr. Wente, of the research division of the Western Electric Company he worked on producing such a slit in 1920, 1921, and 1922. He testified: "The optical slit which is used by the Western Electric Company at the present time is substantially the type which I devised and used. It is in fact the only kind of a slit I ever used in reproducing." Without entering into a detailed description of the optical slit mechanism and the principles on which it works, it suffices to say that the fact that it cannot come into contact with the film, but is located several inches from it, and that it is sealed and protected against dirt suffices to make it a wholly different structure from Ries' patent, which, as we have seen in the extract quoted, was granted on the view of the Patent Office that "the novelty in this application resides in the provision of the slit means, in the location specified," etc. It fol-lows therefore that this court cannot hold that the location of the slit at another location, and which functions differently by reason of such different placement, embodies Ries' device and infringes his patent. So holding that defendant does not infringe, a discussion of the other defenses is unnecessary.

■ This patent, No. 1,607,480, is the basic and substantial matter here in question, and the others, viz., No. 1,693,071, No. 1,466,701, and No. 1,695,414, pertain to minor details of attachments. As to them we find ourselves in agreement with the court below in holding they are not infringed by defendant. Without entering into minute details, we may say that, as to patent No. 1,693,071 it was held in the Patent Office procedure that "any invention (in the De Forest disclosure) resides in the structure of the sound converting unit per se," and the claim here in issue had in the combination claimed the elements of "two alligned casings disposed so as to provide a film path there between" and "a slit in each of the adjacent ends of said casings." Limiting, as we think we should, the claim of these defined constructions, we find the defendant's structure does not have such casing ends or any slitted member. And, indeed, it more nearly resembles the Simplex device shown in Cannock's patent, No. 1,075,692 of 1913.

It is also significant that the structure of patent No. 1,693,071 never was used in practice nor indeed constructed. It has in no way contributed to promote progress in its art. So also with regard to the device of De Forest in his kindred second patent, No. 1,695,414, as to which his own testimony is: "I think only one or two were built like that, for we found that the mechanical construction was too expensive, too elaborate. * * * The locking device, etc., as shown in the figures of my second patent are involved and complicated." To now rewrite this patent so as to make the defendant's device, which was produced by independent effort and different method, would be to lose sight of the constitutional aim underlying the grant of patents. We are urged to decree these patents invalid. We do not feel called upon to so hold, but limit ourselves to saying that, if valid, they are not infringed. Without entering into details of the De Forest Device embodied in patent No. 1,466,701 or discussing the prior art, exemplified in Fitch's patent, No. 1,397,862 of November 22, 1921, applied for November 26, 1917, and others that might be cited, we are of opinion it is not infringed by defendant's

machine. It follows, therefore, that the decree entered below, in so far as it holds No. 1,607,480 is infringed, is reversed, and, in so far as it holds the other three patents are not infringed, is affirmed. So holding, the record will be remanded to the court below, with instructions to enter a decree that no one of the patents is infringed and the plaintiffs' bill is dismissed.